**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patricia FOREMAN,**
**Defendant–Appellant.**

No. 89–50038.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1989.

Decided June 19, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Feb. 26, 1991.

ORDER

The above-entitled opinion found at 905 F.2d 1335 (9th Cir.1990) is amended per the attached. With these amendments Judges Browning and Boochever vote to deny the petition for rehearing. Judge Reinhardt votes to grant it. Judges Browning and Reinhardt reject the suggestion for rehearing en banc and Judge Boochever so recommends.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. (Fed.R.App.P. 35.)

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

AMENDED OPINION

BOOCHEVER, Circuit Judge:

Patricia Foreman challenges the district court's imposition of a two-level upward adjustment of offense level for "abuse of position of trust" pursuant to § 3B1.3 of the Guidelines.[1] We find that the adjustment was warranted and affirm the district court's decision.

FACTS AND PROCEDURAL HISTORY

On July 20, 1988, Foreman was a Wellston, Missouri police officer. On that date she was questioned by Los Angeles Police Department officers and Drug Enforcement Agency agents in the Los Angeles International Airport after the officers observed what they considered suspicious behavior on her part. Specifically, as it was a warm summer evening, Foreman's wearing of a heavy, denim jacket captured the officers' attention. They noticed her approach the United Airlines ticket counter, purchase a ticket for a flight to St. Louis, and begin to run toward the departure gate.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Jeffrey C. Eglash and Peter Morris, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.

---

1. Foreman also challenges the constitutionality of the Guidelines, claiming they violate due process by limiting the sentencing discretion of district courts and infringing defendants' rights to individualized sentences. We recently upheld the constitutionality of the Guidelines on these grounds in *United States v. Brady*, 895 F.2d 538 (9th Cir.1990). Foreman's constitutional challenge, therefore, is precluded by our decision in *Brady*.

They approached her, identified themselves as police officers, and asked if they could speak with her. In response to their request for identification, she showed them her Wellston badge and police identification and stated that she was an active sworn police officer. The officers asked her if she was carrying any drugs to which she replied, "No." They asked if they could search the small carry-on bag she carried. She answered, "What for?" The officers advised her that she was acting suspiciously. She responded that she did not have anything in her bag and started to walk toward the security screening checkpoint.

As she approached the checkpoint, the officers noticed an unusual bulge in her stomach area, around her belt line. They asked her to stop so they could speak with her again. She told them she had nothing in the bag and unzipped it to show them. The officers asked her about the bulge around her stomach area. She said it was a belt. She consented to allowing one of them to feel the bulge. An officer determined that it was a plastic bag containing a soft, powdery substance later chemically identified as cocaine. Another bag was found in her jacket. The officers arrested her for possession of a controlled substance.

Foreman was indicted August 5, 1988, and pled guilty on November 14, 1988, to one count of possession with intent to distribute 310 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). In determining her sentence under the Guidelines, the district court included a two-level upward adjustment for abuse of a position of trust, concluding that Foreman had "used her position as a police officer to attempt to dissuade the investigating officers from proceeding further with their investigation." The court concluded that her range of sentence was 33 to 41 months and found no basis for departure from that range because of Foreman's strong standing in her community and the great sense of shame and embarrassment she felt from her betrayal of her position in the community. Instead, in its calculation of the sentence range, the court allowed a two-level downward adjustment for "acceptance of responsibility." On January 23, 1989, the court sentenced her to 33 months in custody followed by three years of supervised release.

## DISCUSSION

Foreman was assessed a two-level upward adjustment as she "abused a position of public ... trust ... in a manner that significantly facilitated the ... concealment of [her] offense." United States Sentencing Commission, *Guidelines Manual* § 3B1.3. Specifically, the district court found she abused a position of trust by showing her badge and police identification to the investigating officers during their initial questioning. She challenges this adjustment, claiming that the use of her police identification did not constitute an abuse of her position of trust "in a manner that significantly facilitated" concealment of her crime.

The statute establishing appellate review of sentencing decisions under the Guidelines provides that the court of appeals "shall give *due deference* to the district court's application of the guidelines to the facts." 18 U.S.C.A. § 3742(e) (West Supp. 1989) (emphasis added); *accord United States v. Sanchez–Lopez*, 879 F.2d 541, 557 (9th Cir.1989).

> This standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a district court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988). This definition of "due deference" parallels the standard of review for mixed questions of law and fact we announced in *United States v. McConney*, 728 F.2d 1195,

1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989) (citing *McConney*).

> If application of the rule of law to the facts requires an inquiry that is "essentially factual," one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct," ... the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, ... the question should be classified as one of law and reviewed de novo.

*McConney*, 728 F.2d at 1202 (quoting *Commissioner v. Duberstein*, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960)) (citations omitted).

Foreman raises both factual and legal issues. The factual issue is whether Foreman flashed her badge hoping to thwart the officers' investigation. We defer to the factual determinations made by the district court in the course of its application of the Guidelines unless they are clearly erroneous. See *United States v. Wills*, 881 F.2d 823, 827 (9th Cir.1989). The legal issues are whether an abuse of a position of trust must implicate a special privilege accorded someone in that position and whether an upward adjustment under § 3B1.3 is proper for abuse of a position of trust in a manner that significantly facilitated the concealment of an offense which was not successfully concealed. We review the district court's legal interpretation of the Guidelines de novo.

■ Foreman argues, as a factual matter, that she showed her badge in response to police questioning and had no intention of using it to deflect their investigation. The district court, however, made the following findings and conclusions:

> The facts are that when defendant was first approached by the police at the Los Angeles Airport, she displayed her badge and police identification to the officers. Given the circumstances of the display of police identification and badge, the court is satisfied that the defendant then used her position as a police officer to attempt to dissuade the investigating officers from proceeding further with their investigation. This attempt was not successful. However, it was an abuse of the position of trust for the defendant to use her employment as a police officer to attempt to deflect the investigation of her, and thus attempt to escape responsibility for her criminal activity.

Foreman does not dispute the fact that she showed her badge to the investigating officers after they began questioning her. A police officer knows the power of her badge. Symbolizing the power of the state, a badge invests its possessor with control over people and access to places. This action and the circumstances surrounding it lead to a strong inference that Foreman's conduct was intentional and that she hoped to conceal her cocaine possession.

Foreman argues she was trained to identify herself as a police officer and was merely following orders when she flashed her badge. She further represents that she showed her badge only because it was on top of her driver's license in her wallet. We doubt that Foreman was trained to carry her badge and police identification while smuggling cocaine. Likewise she was not compelled to tell the investigating officers that she was an active sworn police officer. Certainly one reasonable inference is that she kept her badge with her for the very purpose she used it, to exhibit to officers in the event she was stopped, and thus deflect questioning. Accordingly, we hold the district court's finding that Foreman used her badge to deflect police questioning was not clearly erroneous.

■ Turning to the legal issues on appeal, Section 3B1.3 states: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." *Guidelines Manual*,

§ 3B1.3. Foreman argues that § 3B1.3 applies only to abuses of trust that involve use of a special privilege accorded someone in that position of trust. She claims that § 3B1.3 is therefore inapplicable to her because she did not abuse any special privilege accorded her as a police officer by showing her badge and police identification to the investigating officers.

We find no merit in this argument. Notwithstanding that having a police badge itself may be a special privilege, the adjustment in § 3B1.3 is for "abuse of a *position* of trust." The guideline does not expressly limit such abuse to special privileges accorded to one with a position of trust, nor do we believe that such a limitation can be inferred. More specifically, police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing. Foreman took advantage of that trust to make it easier for her to conceal criminal activity. We believe that this is precisely the type of situation contemplated by § 3B1.3 as an abuse of position of public trust. We hold, therefore, that the district court correctly concluded that Foreman's use of her position as a police officer constituted an abuse of a position of public trust.

■ Foreman also contends that any efforts on her part to use her position as a police officer to avoid investigation were unsuccessful and thus could not have "significantly facilitated" concealment of her crime. She claims that mere attempts to use a position of trust to significantly facilitate a crime do not come within the Guide-

lines and therefore do not justify the upward adjustment imposed here. The district court found, however, that she did not merely attempt to use her position, but that she actually abused it. Moreover, Foreman's focus on the success of her efforts, or lack thereof, is misplaced.

■ The language of § 3B1.3 does not require the abuse of a position of trust to result in the successful concealment of the offense. If that were case § 3B1.3 would have read, "[i]f the defendant abused a position of ... trust ... in a manner that resulted in the commission or concealment of the offense" instead of requiring only that the abuse of position of trust occur "in a manner that significantly facilitated the ... concealment."

■ "Facilitate" is defined as "to make easier or less difficult." *Webster's Third New International Dictionary* 812 (1976). Thus, the guideline's use of the word "facilitated" implies that the drafters of this section intended it to apply to any abuse of a position of trust which significantly made it easier to commit or conceal a crime, regardless of the success of that abuse.[2] Identifying oneself as a police officer and using the symbols of that position make it significantly easier to conceal possession of a controlled substance. It was significantly easier for Foreman to conceal her possession of cocaine because she identified herself as a police officer and used the symbols of that position.

Any other reading of § 3B1.3 would make enhancement of Foreman's sentence because of her abuse of her position of trust depend entirely upon the gullibility of

---

**2.** The dissent claims that we ignore § 3B1.3's use of the term "significantly," which the dissent argues "plainly requires the sentencing judge to assess the *effect* of the abuse, and to determine whether the effect was of sufficient magnitude: it must have furthered the crime or concealment 'significantly.'" Dissent at 798 (emphasis in original). "Significantly," however, does not modify "commission or concealment," but modifies "facilitated." Thus, the inquiry is not the extent to which the abuse of trust *furthered* the crime or concealment, but whether the abuse made the crime significantly *easier* to commit or conceal.

The Commentary to the guideline is to the same effect. "The position of trust must have

contributed in some substantial way *to facilitating* the crime and not merely have provided an opportunity that could *as easily* have been afforded to other persons." *Guidelines* § 3B1.3 (Application Note 1) (emphasis added).

In contrast to the use of the badge to board a plane more speedily which would slightly facilitate concealment, here, Foreman used it to deflect investigation of her criminal activity. Thus, the district court's finding that such use significantly facilitated concealment of Foreman's crime was not clearly erroneous. *See McConney*, 728 F.2d at 1204.

the police officers rather than upon Foreman's own culpability, as the Guidelines intend. *See Background* § 3B1.3. If the officers had discontinued their investigation and waved Foreman on in reliance on her badge, and discovered her guilt only later, Foreman's breach of her position of trust would have resulted in an enhancement of her offense since it would have concealed her offense, albeit temporarily. To make the enhancement applicable in that situation but not in the present one would treat her degree of culpability differently for exactly the same conduct. Such a reading of § 3B1.3 would be unreasonable.

We hold, therefore, that the district judge properly applied § 3B1.3 in adjusting upward Foreman's sentence as her use of her badge and police identification to deflect police questioning made it significantly easier for her to conceal her cocaine possession.

## CONCLUSION

Abuse of a position of trust under § 3B1.3 is not limited to abuse of a special privilege accorded to one with a position of trust. Moreover, the enhancement provided in that section applies to an abuse of a position of trust that significantly facilitated the concealment of the offense, whether successful or not. The district court's factual finding that Foreman used her position as a police officer to deflect a criminal investigation was not clearly erroneous and, therefore, the court properly assessed a two-level upward adjustment in Foreman's sentence.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

In affirming the district court's two-level upward adjustment of Foreman's sentence, the majority enlarges the scope of section 3B1.3 far beyond anything the language of that provision can reasonably bear. I have expressed elsewhere my reservations about the restrictions which the Sentencing Guidelines place on the discretion of the sentencing judge. *United States v. Brady,* 895 F.2d 538, 544 (9th Cir.1990) (Reinhardt,

J., concurring specially). Nevertheless, since we must apply the Guidelines, we should apply them as they are written. Because I cannot acquiesce in the strained interpretation rendered by the majority, I dissent.

I begin with the language of the applicable guideline:

§ **3B1.3. Abuse of Position of Trust or Use of Special Skill**

If the defendant abused a position of public or private trust, or used a special skill, *in a manner that significantly facilitated the commission or concealment of the offense,* increase by 2 levels. This adjustment may not be employed in addition to that provided for in § 3B1.1, nor may it be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

United States Sentencing Commission, *Guidelines Manual,* § 3B1.3 (Nov. 1989) (emphasis added). The majority concedes that Foreman's offense was complete by the time she showed her badge, and that this section is applicable only if Foreman's act of identifying herself as a police officer constituted an abuse of a position of public trust, which "significantly facilitated the ... concealment of the offense." *Id.* (emphasis added).

The majority gives short shrift to Foreman's argument that her conduct was not an "abuse" of her position as an officer. Foreman suggests that section 3B1.3 applies only when the offender abuses a "special privilege" enjoyed by virtue of her position of public trust, and I can agree with the majority that this interpretation is unsatisfactory. Still, it must be conceded that section 3B1.3 applies to offenders who *abuse* positions of public trust; not merely to those who *occupy* such positions or even to those who *use* such positions. To abuse is "[t]o use improperly, to misuse; to make a bad use of, to pervert, or misemploy; to take a bad advantage of." *Oxford English Dictionary* 11 (Compact Ed.1971). This seems to me to require *something more* than merely responding to a request for identification in precisely the way in which

police officers are expected to respond. In this case, the something more is intent: if we accept the district court's finding that Foreman flashed her badge in a conscious attempt to deflect suspicion and conceal her offense, then we must conclude that this attempt was an abuse, rather than merely a use, of her position of public trust.[1] However, I need not resolve the intent question because Foreman's conduct, whether or not it was an "abuse" of her position, clearly did not satisfy the rest of section 3B1.3.

Section 3B1.3 does not permit or direct the sentencing judge to enhance the sentence of everyone who abuses a position of public trust. Instead, it provides for enhancement only if the defendant's abuse *"significantly facilitated* the ... concealment of the offense" (emphasis added). The majority notes that facilitating a crime or concealment means making it easier, not necessarily making it successful; that is true enough, as far as it goes. However, the majority then proceeds to commit several serious errors. First, it virtually ignores the word "significantly," which modifies "facilitated." On its face, this term

plainly requires the sentencing judge to assess the *effect* of the abuse, and to determine whether that effect was of sufficient magnitude: it must have furthered the crime or concealment "significantly." Furthermore, the use of the past tense, *i.e.*, "facilitated," renders indisputable the proposition that the abuse must have actually had some effect. The abuse must have *significantly facilitated* (a matter of historical fact); it is not sufficient to say merely that the act in question constitutes the sort of act that, conceivably or in general, has a tendency to significantly facilitate.[2]

The majority notes, as I do, that "significantly" modifies "facilitated" rather than "commission or concealment." Based upon this observation, the majority asserts that "the inquiry is not the extent to which the abuse of trust *furthered* the crime or concealment, but whether the abuse made the crime significantly *easier* to commit or conceal." *Ante*, at 796 n. 2. I see no difference between these two inquiries, unless the majority believes that "furthered" connotes ultimate success in a way that "facilitated" does not.[3] In any event, even tak-

---

1. The district court reached this conclusion despite Foreman's uncontradicted representation at the sentencing hearing that she showed her badge only because it was on top of her driver's license in her wallet—precisely where she had been trained to keep it. This was an eminently reasonable explanation for her conduct, and I strongly suspect that nearly all police officers are trained to keep their badges in a similar location. It is also likely Foreman was trained to identify herself as a police officer on all occasions involving public contact with government officials, as well as on any occasions where contact with private citizens might lead to controversy or official action. We should not lightly infer an improper motive when an officer of the law merely follows orders.

It is of course true that Foreman was not "trained to carry her badge and police identification *while smuggling cocaine." Ante* at 795 (emphasis added). However, my colleagues miss *the point of Foreman's argument.* She contends that she was trained to carry her badge and to identify herself as a police officer as a matter of course, regardless of the specific activity in which she was engaged. Thus, she recognizes that she had a criminal motive in smuggling cocaine, but argues that she had no *further* criminal motive in identifying herself as a police officer. That, she contends, was a mere reflex. In any event, in doing so she complied

with the instructions she had been given by her superiors.

2. The majority refuses to look at the effect of Foreman's attempted abuse of her position because the majority believes that it would be "unreasonable" for the severity of a defendant's punishment to depend on anything but her mental state. *Ante* at 797. As support for this sweeping conclusion, the majority cites the *Background* statement to section 3B1.3. But that statement provides only that those "who abuse their positions of trust ... to facilitate significantly the ... concealment of a crime ... generally are viewed as more culpable." Where is the prohibition on looking to effects? I would respectfully suggest that what is unreasonable is the majority's decision to ignore the plain language of the Guidelines. After all, both the United States Code and the Guidelines are filled with instances where a defendant's treatment depends in part on the effects of his conduct.

3. Such a connotation is certainly unintended, and lacks objective support as well. To "further" is "[t]o help forward, assist (usually things, less frequently persons); to promote, favour (an action or movement)." *Oxford English Dictionary* 1099 (Compact Ed.1971).

ing the majority's preferred formulation as the authoritative version of the test, there is simply no conceivable argument that it was satisfied here. In this case Foreman's showing of her badge did not serve to make her crime easier to commit, nor did it have any practical effect upon her effort to conceal the offense. In fact, Foreman's actions had no practical effect whatsoever. Contrary to the majority's assertion, not even the district court found that her actions had any effect on the criminal activity involved,[4] and the majority provides no argument for adopting a different view of the facts on appeal.

Since the majority makes no argument whatsoever that Foreman's use of her police badge altered, let alone "significantly" altered, her situation in any way, the plain meaning of section 3B1.3 should foreclose any further inquiry and preclude any enhancement based upon this section. Only thus can we honor the venerable principle that if the language of a statute is clear, that language must ordinarily be given its plain meaning. *Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987); *id.* at 452, 107 S.Ct. at 1223 (Scalia, J., concurring in the judgment) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95–96, 5 L.Ed. 37 (1820) (Marshall, C.J.); *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830 (1868); *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 34, 15 S.Ct. 508, 515, 39 L.Ed. 601 (1895) (Harlan, J.); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947) (Jackson, J.); *United States v. Sullivan*, 332 U.S. 689, 693, 68 S.Ct. 331, 334, 92 L.Ed. 297 (1948) (Black, J.); *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 64, 73 S.Ct. 580, 583, 97 L.Ed. 821 (1953) (Douglas, J.)).

Disregarding this rule, the majority looks past the unambiguous language of section 3B1.3 in order to justify its rather odd "implication" that an unsuccessful effort to facilitate is the same as having "significantly facilitated," or is somehow included within the latter phrase. Here, the majority repeats its first error, this time misconstruing the most pertinent aid to construction of the guideline: the official Commentary that was *adopted* along with it. *See ante*, at 796 n. 2. This Commentary, properly read, is devastating to my colleagues' construction. The degree of facilitation necessary for enhancement is virtually the only aspect of the "abuse of trust" portion of section 3B1.3 that receives any attention in the Application Notes that were adopted as part of the official Commentary—which should tell us something about the importance of this requirement. According to the Commentary, "[t]he position of trust must *have contributed in some substantial way* to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." *Guidelines Manual* § 3B1.3, Commentary (Application Note 1) (emphasis added). This Commentary, like the guideline it amplifies, clearly calls for an inquiry into the *extent* to which the abuse of trust contributed—*actually* contributed—to the concealment of the offense. The majority settles instead for enhancement based upon an alleged bare and unsuccessful attempt to conceal, without any evaluation of efficacy. Yet an intent to use one's position to facilitate concealment is inherent in the very concept of "abuse"; the majority's approach gives no effect to the *further* requirement that the abuse have *significantly facilitated* or *substantially contributed* to the concealment. The phrase "in connection with" could be substituted for "in a manner that significantly facilitated" and the result, as the majority reads the statute, would be identical in every case.

In summary, the guideline applies only to an abuse of trust that significantly facilitated the concealment of a crime. No one could suggest that any such event occurred

---

**4.** See note 5 *infra.*

here.[5] All that happened is that Foreman showed her badge in response to a request for identification from federal and local law enforcement agents whose suspicion she had aroused. Her doing so had absolutely no effect on subsequent occurrences. The investigating authorities were completely unimpressed and proceeded to question Foreman regarding the unusual bulge around her waist. The incredulous officers ignored her answer and asked to feel the bulge; when Foreman consented to this search, the narcotics were discovered and she was arrested.

Although Foreman's conduct clearly did not facilitate anything, the majority refuses to apply the plain meaning of the statute. The result is a guideline covering something which could be called "attempted concealment," which was not covered before, and which the majority apparently believes is not subject to the clearly expressed statutory command that the sentencing judge assess the *efficacy* of the conduct in question by determining whether it *significantly facilitated* the concealment. Honesty, uniformity, and proportionality—the justifications which the Sentencing Commission advances for the Guidelines, *Guidelines Manual*, Ch. 1, Pt. A ("Introduction"), n. 3 ("The Basic Approach")—are not fostered by such an approach to the Commission's language. Accordingly, I dissent.

---

5. The majority concludes: "the enhancement [of section 3B1.2] applies to an abuse of a position of trust that significantly facilitated the concealment of the offense, whether successful or not. The district court's factual finding that Foreman used her position as a police officer to deflect a criminal investigation was not clearly erroneous." *Ante* at 797. It bears emphasizing that all the district court actually said was that Foreman "attempt[ed] to dissuade the investigating officers from proceeding further with their investigation. This attempt was not successful." The district judge plainly thought it was sufficient to find that Foreman *intended* to facilitate the concealment of her crime; he did not address the efficacy of Foreman's conduct at all. By relying on the district judge's assessment of the case, the majority simply repeats his error.