19 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rita Marie STIMSON, Defendant-Appellant.
 No. 93-30193.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1994.*
Decided Feb. 25, 1994.
 
 Before: SCHROEDER, CANBY, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Rita Marie Stimson appeals her twelve-month sentence following entry of a guilty plea to accessory after the fact to conspiracy to defraud the government by making false claims to the Department of Treasury and misusing social security numbers of others in violation of 18 U.S.C. Secs. 3, 287, 371. Stimson contends the district court erred by making upward adjustments in her offense level for (1) the value of the intended loss and (2) more than minimal planning. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 * Background
 
 
 4
 In 1991, Ronald Sanborn devised a scheme to file false tax returns. Sanborn asked Jack Rowlands to assist him by obtaining social security numbers, renting mailboxes, and retrieving mail from the mailboxes. Initially, Sanborn told Rowlands the scheme involved selling new identities to German immigrants.
 
 
 5
 In turn, Rowlands asked Stimson to obtain social security numbers from her employer. In November 1991, Stimson took a payroll printout from the trash which contained the social security numbers of approximately 10,000 employees. Because the printout was bulky, Stimson smuggled it out in her tote bag on two separate days. At that time, Stimson believed the social security numbers would be used for an immigration scheme.
 
 
 6
 Using the list, Sanborn filed approximately 950 false tax returns, which would have yielded $7,935,668.00.
 
 
 7
 In the fall of 1991, Sanborn told Rowlands the true nature of the scheme and together they rented mailboxes in the San Francisco area. Sanborn also opened foreign bank accounts for himself, Rowlands, and Stimson, into which he intended to deposit the profits. During that time, Stimson obtained a passport and a visa so that she could leave the country if the scheme were uncovered.
 
 
 8
 In January 1992, Stimson quit her job and accompanied Rowlands on a two-week trip to New Jersey, Virginia, and Washington, D.C. to find mailboxes to rent. Sanborn paid for and arranged the trip. Because Rowlands could not read, Stimson acted as navigator and secretary, for example, recording the location of the mailbox on the key tag. Sanborn joined them for three days, during which time they rented approximately fifteen mailboxes.
 
 
 9
 In March 1992, Rowlands and Stimson went to San Francisco to collect mail from the mailboxes. On March 16, 1992, an employee at one of the locations told Rowlands that federal agents had been watching the mailbox. At that time Rowlands told Stimson the true nature of the scheme. Stimson and Rowlands then destroyed the evidence by burning the refund checks, maps, notes, and key tags and throwing the mailbox keys out the car window.
 
 II
 Offense Level
 
 10
 We review de novo the district court's application of the Sentencing Guidelines and for clear error the factual findings supporting the sentence. United States v. Foreman, 926 F.2d 792, 795 (9th Cir.1990).
 
 
 11
 The base offense level for accessory after the fact is six levels lower than the base offense level of the underlying offense. U.S.S.G. Sec. 2X3.1. The commentary to this section defines "underlying offense" as "the offense as to which the defendant is convicted of being an accessory" and instructs the court to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." Id. Sec. 2X3.1, comment. (n. 1).
 
 
 12
 Here, the offense level for the underlying offense of conspiracy to defraud is governed by Section 2F1.1. Section 2F1.1 provides for a fourteen-level upward adjustment if the loss exceeded five million dollars, id. Sec. 2F1.1(b)(1)(O), and a two-level upward adjustment if the offense involved more than minimal planning, id. Sec. 2F1.1(b)(2).
 
 A. Value of Loss
 
 13
 Stimson argues the value of loss adjustment does not apply because she never agreed to the object of the conspiracy--to make false claims to the government by filing fictitious income tax returns--until after the fact. Nonetheless, at the time Stimson destroyed evidence of the crime, she knew the true nature of the scheme was income tax fraud. Consequently, given the thousands of social security numbers she provided, the extensive trips to rent mailboxes, and her arrangements to leave the country, the district court did not err by concluding Stimson reasonably should have known that the loss would exceed five million dollars. See id. Sec. 2X3.1, comment. (n. 1). Accordingly, the district court did not err by applying this adjustment.
 
 B. More Than Minimal Planning
 
 14
 Stimson contends that because she was not the mastermind of the plan, but only participated in a well-planned offense, the more than minimal planning adjustment does not apply. This contention lacks merit.
 
 
 15
 "More than minimal planning" is "more planning than is typical for commission of the offense in a simple form." Id. Sec. 1B1.1, comment. (n. 1(f)); see generally United States v. Kelly, 993 F.2d 702, 705 (9th Cir.1993) (more than minimal planning adjustment describes the complexity of overall scheme).
 
 
 16
 Given the scope of Stimson's own activities to further the scheme--smuggling a computer printout from work with 10,000 names, obtaining a passport and visa, quitting her job to travel to the East Coast to secure mailboxes, and serving as navigator and secretary on the trips--she reasonably should have known at the time she became an accessory after the fact that the underlying offense itself involved more than minimal planning. See id. Sec. 2X.3.1, comment. (n. 1); see, e.g., United States v. Mullins, 992 F.2d 1472, 1474-74, 1480 (9th Cir.) (more than minimal planning adjustment applied to travel agents' scheme to defraud airline of frequent flier miles by creating 850 fictitious accounts and arranging 29 mail drops), cert. denied, 113 S.Ct. 2997, and cert. denied, 114 S.Ct. 556 (1993). Accordingly, the district court did not err by applying this adjustment.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3