34 F.3d 1067
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph REDDICK, a/k/a Black, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joy Malissa BARBER, Defendant-Appellant.
 Nos. 93-5471, 93-5678.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: Aug. 4, 1994.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Winston-Salem. William L. Osteen, Sr., District Judge. (CR-92-238-WS)
 ARGUED: Robert Immel O'Hale, McNairy, Clifford & Clendenin, Greensboro, North Carolina, for Appellant Reddick.
 Daniel Smith Johnson, Wilson, Degraw & Johnson, Winston-Salem, North Carolina, for Appellant Barber.
 David Bernard Smith, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 ON BRIEF: Benjamin H. White, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and KNAPP, Senior United States District Judge, Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants, who were convicted of drug conspiracy charges, allege various trial and sentencing errors on the part of the district court. Because we find no merit to any of these challenges, we affirm the judgments below.
 
 I.
 
 2
 On November 30, 1992, defendants Joy Malissa Barber, a police officer for the city of Winston-Salem, North Carolina, and Joseph Reddick were indicted for their participation in a cocaine base trafficking conspiracy. Barber and Reddick were each charged with one count of conspiracy to possess with intent to distribute cocaine base, see 21 U.S.C. Secs. 841(a)(1), (b)(1)(A) & 846, and multiple counts of possession, and possession with intent to distribute, cocaine base, see 21 U.S.C. Secs. 841(a)(1) & (b)(1)(A). In addition, Barber was charged with possession of a firearm during and in relation to a drug trafficking crime. See 18 U.S.C. Secs. 924(c)(1) & (2).
 
 
 3
 Barber and Reddick were tried on these charges in April 1993. Essentially, the government argued that Reddick was the leader of a conspiracy to transport drugs from New York for sale in North Carolina. A number of individuals participated in the transportation and distribution of the drugs, including Christiaan Smith and Leroy C. Richardson, Jr. Barber's involvement in the conspiracy came through her romantic attachment to Richardson. The government alleged that Barber aided the conspiracy in a variety of ways, including informing Richardson and Smith of police activities, storing drugs for Richardson, and harassing individuals who interfered with Richardson's operations.
 
 
 4
 Specific evidence supporting these contentions included testimony regarding several occasions where Reddick arranged for the transportation of crack cocaine from New York to North Carolina. Smith testified that he distributed crack received from Reddick and that Richardson aided in that distribution. Testimony by two witnesses indicated that, on separate occasions, they had observed crack cocaine in Barber's apartment, and Richardson admitted to having twice brought half ounce quantities to Barber's apartment. Testimony by James Thomas indicated that Barber once declined to search Thomas and Richardson when she had come upon them carrying drugs in an automobile. Finally, over Barber's objection, the government introduced evidence regarding her on-duty traffic stop of Reginald Hunter. The government argued that this traffic stop had been initiated by Barber as retribution for Hunter's theft of crack cocaine from Richardson.
 
 
 5
 The jury found Reddick guilty on all counts and Barber guilty of conspiracy to distribute cocaine base. Reddick was sentenced to 235 months in prison and Barber was sentenced to 151 months in prison. Both now appeal various aspects of their sentences, and Barber also appeals the district court's decision to admit evidence regarding the traffic stop of Hunter.
 
 II.
 
 6
 On appeal, Barber contends that the district court erred in declining to grant her pretrial motion to exclude testimony regarding the traffic stop of Reginald Hunter. See Fed.R.Evid. 403. According to Barber, the government had only slender evidence demonstrating a tie-in between the stop and Hunter's robbery of Richardson. Furthermore, much of the government's evidence regarding the incident was provided by Jonathan Little, whose testimony Barber challenges as inconsistent. For these reasons, she argues that it was unduly prejudicial to have allowed the jury to hear any testimony on the traffic stop.
 
 
 7
 We cannot agree. A decision regarding evidentiary exclusion under Rule 403 is committed to the sound discretion of the trial judge, and "absent extraordinary circumstances, the Courts of Appeal will not intervene in its resolution." United States v. MacDonald, 688 F.2d 224, 227-28 (4th Cir.1982); see United States v. Tindle, 808 F.2d 319, 327 n. 6 (4th Cir.1986). Defendant's claim cannot meet that standard.
 
 
 8
 Barber's argument essentially amounts to a series of challenges to whether the evidence regarding the Hunter stop convincingly demonstrates her involvement in the conspiracy. However, the mere fact that evidence is disputed, or even highly disputed, does not mean that presenting it before the jury prejudices a defendant. Barber had ample opportunity to develop her own side of the incident and to point out what she believed to be the gaps and inconsistencies regarding the traffic stop evidence. At that point, it was up to the jury to decide whose testimony to credit. See United States v. Mack, 695 F.2d 820, 822 (5th Cir.1983). Moreover, the government did present significant evidence regarding the incident. Little testified as to Barber's knowledge of Hunter's theft. In addition, the officers present at the scene stated that the stop of Hunter was initiated by Barber and that Barber threatened Hunter during the stop regarding "what you did yesterday." Because Barber's unit had not worked the day before the stop, the government maintains that this statement is evidence of a private quarrel between Hunter and Barber. Viewing this evidence, as we must, in the light most favorable to the government, we cannot say that the trial court erred in placing it before the jury. See United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990) (stating that the preference in favor of admitting evidence requires that courts "maximiz[e] its probative value and minimiz[e] its prejudicial effect") (quoting Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1135 (4th Cir.1988)).
 
 III.
 
 9
 Both Reddick and Barber challenge the district court's assessment at sentencing regarding the amounts of drugs attributable to them.
 
 A.
 
 10
 Reddick argues that virtually all of the witnesses who testified against him at trial were "inherently uncredible" because they were testifying in the hope of reduced sentences. He therefore requests that we remand his case for resentencing based on "credible" testimony alone.
 
 
 11
 This argument lacks merit. A conviction may be based on the testimony of those who have received lenient treatment from the government, see United States v. Osum, 943 F.2d 1394, 1405 (5th Cir.1991), and we see no basis for declaring any of the testimony in this case incredible as a matter of law. See United States v. Lindell, 881 F.2d 1313, 1322 (5th Cir.1989) (holding that testimony may be declared incredible as a matter of law only when it is "so unbelievable on its face that it defies physical laws"). Furthermore, Reddick had the opportunity on cross examination to test the circumstances surrounding each witness' testimony. In spite of his efforts, the jury clearly believed the government's witnesses, and it certainly was not "clearly erroneous" for the judge at sentencing to rely on that trial testimony in determining the amount of drugs attributable to Reddick. United States v. Mark, 943 F.2d 444, 450 (4th Cir.1991).*
 
 B.
 
 12
 Barber contends that much of the drug amount attributed to her cannot be tied in any way to her involvement in the drug conspiracy. The Presentence Report prepared in her case indicated that Barber should be held accountable for 1,332.17 grams of crack cocaine. However, the district court ultimately determined that while "there is evidence from which a Court could find substantial other amounts of drugs at other places, and at other times involved in this conspiracy," it would hold Barber accountable for only 70.87 grams of crack cocaine. This amount was based on four incidents in which Barber was directly involved in drug trafficking. Specifically, it included attribution for 28.3 grams of crack cocaine observed in her bedroom, two half ounce quantities that Richardson had while he was with her in her apartment, and the half ounce quantity Hunter had stolen from Richardson.
 
 
 13
 Barber maintains that the evidence is insufficient to tie the first three amounts to her participation in the conspiracy. Specifically, she contends that the witnesses were uncertain regarding the exact dates when the drugs were present in her apartment and whether she was actually storing the drugs herself. She also renews her claim that the evidence regarding the Hunter stop is simply too speculative to be credible. She therefore concludes that these drug amounts cannot be attributed to her involvement in the conspiracy.
 
 
 14
 We, however, cannot accept this argument. The essence of the government's case against Barber was that she aided the conspiracy by storing drugs for Richardson and by using her position as a police officer to support his operations. A variety of trial testimony supported this position, and the jury ultimately found Barber to be a participant in a drug conspiracy. At sentencing, the district court chose to attribute to Barber only those amounts directly related to her actual conduct. Three of the four incidents involved the presence of drugs in her own apartment; the fourth involved the Hunter stop, an event she had precipitated. We cannot find any error, much less clear error, in the district court's careful assessment that these drug amounts should be attributed to Barber's participation in the conspiracy. See United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989).
 
 IV.
 
 15
 Barber next challenges two additional aspects of her sentence: her enhancement for abuse of a position of public trust under U.S.S.G. Sec. 3B1.3, and her enhancement for possession of a dangerous weapon under U.S.S.G. Sec. 2D1.1(b)(1). We address each contention in turn.
 
 A.
 
 16
 Section 3B1.3 states that, "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." Barber contends that the district court erred in enhancing her sentence because her police-related activities did not actually facilitate the conspiracy. She contends that neither the stop of Hunter, nor the incident in which she let Thomas and Richardson go after stopping them while they were transporting drugs, advanced the conspiracy. She also maintains that the government's evidence regarding both these incidents cannot be considered credible.
 
 
 17
 We cannot agree. The district court found at sentencing that "the use of a police car, use of police equipment, use of an officer's uniform itself, and going up and putting these words[the threats to Hunter]" constituted "an attempt to carry on the conspiracy and protect the conspiracy itself." This finding is in no sense clearly erroneous. See United States v. Helton, 953 F.2d 867, 869 (4th Cir.1992). The government's evidence demonstrated that, on several occasions, Barber used her position as a police officer to shield other participants in the conspiracy and to facilitate their activities by intimidating other dealers who were attempting to interfere with them. The evidence is plainly sufficient to support a Sec. 3B1.3 enhancement for abuse of a position of trust. See United States v. Foreman, 926 F.2d 792, 796 (9th Cir.1990).
 
 B.
 
 18
 Finally, Barber contends that she should not have received the Sec. 2D1.1(b)(1) enhancement. Once again, this argument is based on her challenge to the reliability of the evidence regarding the Hunter stop. Barber contends that because the evidence does not support the conclusion that the Hunter stop was undertaken in furtherance of the conspiracy, the fact that she possessed a gun at that time cannot be used as the basis for a sentencing enhancement.
 
 
 19
 After considering all the evidence, the district court found to the contrary, stating plainly that in stopping Hunter, Barber "was carrying out a matter that was in furtherance of the conspiracy and [the] actions of the conspirators." As we explained above, this conclusion is supported by the evidence. See U.S.S.G.Sec. 2D1.1(b)(1) application note 3 (stating that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense"). The fact that Barber had to carry the weapon as part of her duties as a police officer does not indicate a contrary conclusion. As the First Circuit observed in evaluating a Sec. 2D1.1(b)(1) enhancement for a police officer, "the weapon was closely linked to the very powers and office which appellant used to implement his felonious activities." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir.1990); see United States v. Sivils, 960 F.2d 587, 596 (6th Cir.1992).
 
 V.
 
 20
 For the foregoing reasons, the district court's judgments of conviction, and the resulting sentences, are
 
 
 21
 AFFIRMED.
 
 
 
 *
 Citing Federal Rule of Criminal Procedure 32(c)(3)(D), Reddick also contends that the district court failed to make specific factual findings regarding the amount of drugs attributed to him by the Presentence Report. However, Rule 32(c)(3)(D) plainly requires the district court to make such findings with respect only to alleged inaccuracies in the Report. Here, the district court made such a finding with regard to Reddick's only stated objection, even though granting that objection would not have altered Reddick's base offense level