161 F.3d 977
 UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Raymond MILLER, Defendant-Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Troy MILLER, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Linda BYRNES, Defendant-Appellant.
 Nos. 96-2224, 96-2326, 96-2330 and 96-2331.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 23, 1998.
Decided Nov. 20, 1998.
 
 Barbara Colby Tanase (briefed), Office of U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for United States of America in docket Nos. 96-2224, 96-2326 and 96-2330.
 B. Rene Shekmer, Office of U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for United States of America in docket No. 96-2224.
 Mark V. Courtade, Asst. U.S. Attorney (argued), Office of U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for United States of America in docket Nos. 96-2326 and 96-2330.
 Mark V. Courtade, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for United States of America in docket No. 96-2331.
 Christopher P. Yates (argued), Federal Public Defenders Office, Grand Rapids, MI, for Raymond Miller in docket No. 96-2224 and Troy Miller in docket No. 96-2330.
 Christopher P. Yates (argued and briefed), Federal Public Defenders Office, Grand Rapids, MI, for Raymond Miller in docket No. 96-2326.
 Howard W. Gillingham (briefed), Federal Public Defenders Office, Grand Rapids, MI, for Raymond Miller in docket Nos. 96-2224 and 96-2326.
 David L. Kaczor (briefed), Grand Rapids, MI, for Troy Miller in docket No. 96-2330.
 Linda Lee Byrnes, pro se, Danbury, CT, in docket No. 96-2331.
 C. Mark Pickrell (argued and briefed), Nashville, TN, for Linda Lee Byrnes in docket No. 96-2331.
 Before: BATCHELDER and COLE, Circuit Judges; McCALLA, District Judge.*
 OPINION
 McCALLA, District Judge.
 Defendants Linda Byrnes, Raymond Miller, and Troy Miller were convicted after a trial by jury of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. § 1503. In addition, Byrnes was convicted of two counts of subornation of perjury, in violation of 18 U.S.C. §§ 1622 and 1623(a).[1] Raymond Miller and Troy Miller were both acquitted of the remaining charges.
 Raymond Miller and Byrnes appeal their convictions, and Byrnes appeals her sentence. The United States appealed the sentence of Troy Miller, and filed a cross-appeal as to Raymond Miller's sentence. For the reasons that follow, we AFFIRM in part, VACATE in part, and REMAND for proceedings consistent with this opinion.
 I. BACKGROUND[2]
 All charges arose out of a plan to aid Byrnes' son, a convicted felon, who was on trial for possession of thirty-three firearms. On November 2, 1994, a federal search warrant was executed by federal and state officers at the home of Byrnes and her adult son, John Byrnes.[3] Authorities found and confiscated thirty-three firearms and a gun safe. John Byrnes was later arrested and charged with being a felon in possession of firearms. Subsequent to John Byrnes' arrest, his mother, Kelly Freeman (his girlfriend), several other people who allegedly sold marijuana for him, and Raymond and Troy Miller,[4] were involved in a plan to provide perjured testimony at John Byrnes' trial, in order to prevent his conviction. The plan required that different individuals claim ownership of guns actually owned and possessed by John Byrnes.
 Several meetings were held at the home of defendant Byrnes, in order to discuss and plan which individuals would falsely claim ownership of each of the guns. During these meetings, Byrnes produced a list of the firearms seized during the execution of the search warrant, and kept track of which witness would testify to ownership of each gun. Byrnes also secured a false receipt for the purchase of the gun safe in which most of the guns were stored.
 On the day before John Byrnes' trial commenced, a meeting was held at defendant Byrnes' home to review the list. It was at this meeting that Jeffrey Baker was first asked by defendant Byrnes to claim ownership of two guns, although he did not agree to do so at the time. He did not agree to testify falsely until the morning of the trial. During the meeting, Raymond Miller announced that he would not personally commit perjury, although there was evidence at trial that he threatened others who refused to testify falsely.
 Also, during the same meeting, Douglas Smith indicated that he might be unwilling to participate. At that point, defendant Byrnes threatened to have Smith's "teeth kicked in" if he did not go forward with the plan. Byrnes J.A. at 118. Thomas Raines, another individual who was supposed to be part of the plan, telephoned defendant Byrnes during the meeting, and informed her that he would not testify falsely at trial. Defendant Byrnes became angry and drove to Raines' trailer, accompanied by Smith and Troy Miller, who followed a short distance behind. At Raines' home, Troy Miller and Smith confronted both Raines and Chad Neal, and tried to persuade them to testify falsely. After they refused, Troy Miller and Smith became angry and left, only to return minutes later with Raymond Miller. Raymond Miller threatened to shoot Neal and Raines if they did not testify falsely at the trial.
 Shortly after Raines and Neal were threatened by Raymond Miller, Byrnes met with them and went over their expected testimony with them. Byrnes was present at trial and kept the list of guns and their false "owners" at trial with her, so she could show it to each witness before their testimony. Both Raines and Neal testified falsely as defense witnesses at the trial. Kelly Freeman, Smith and Baker also testified falsely. Despite the perjured testimony, John Byrnes was convicted.
 Afterward, there was an investigation into the perjury, and Kelly Freeman, Byrnes, Raymond Miller, and Troy Miller were all indicted based on their participation in the scheme. Freeman pled guilty to one count of obstruction of justice, and the case went to trial as to the other three defendants. A jury convicted all three of conspiracy to obstruct justice and obstruction of justice. In addition, Byrnes was convicted of counts four and six, subornation of perjury of Chad Neal and Jeffrey Baker, although she was acquitted on the remaining charges. Raymond and Troy Miller were both acquitted of several charges of intimidating a witness and subornation of perjury.
 The district court sentenced Byrnes to a period of sixty months' imprisonment for conspiracy and subornation of perjury, and a concurrent term of seventy-one months' imprisonment for obstruction of justice under 18 U.S.C. § 1503. The district court sentenced Raymond Miller to eighteen months' imprisonment and a three-year period of supervised release on each of the two counts, to be served concurrently, and Troy Miller to fifteen months' imprisonment followed by a three-year period of supervised release on each of the two counts, to be served concurrently. The district court also ordered both Raymond Miller and Troy Miller to pay $100.00 in special assessments.
 Byrnes appealed her conviction under 18 U.S.C. § 1503, as well as her sentence. As to her conviction, she argues that 18 U.S.C. § 1503 does not proscribe witness-tampering. She also argues that the district court erred in enhancing her base offense level four points pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1, for participation as an "organizer or leader." Raymond Miller also appealed, arguing that there was insufficient evidence to support his conviction, and that the government failed to turn over exculpatory evidence to him. The government appealed the sentencing of Troy Miller, and filed a cross-appeal as to the sentencing of Raymond Miller, asserting that the district court erred in its application of U.S.S.G. §§ 2J1.2(c)(1) and 2X3.1.
 II. ANALYSIS
 A. Linda Byrnes
 Byrnes raises two issues on appeal. First, she argues that 18 U.S.C. § 1503 does not proscribe conduct related to witnesses. Second, she contends that the district court erred when it enhanced her base offense level four points under U.S.S.G. § 3B1.1 for being an "organizer or leader."
 1. 18 U.S.C. § 1503
 According to Byrnes, the crucial issue before us is "[w]hether this Court should follow the construction of 18 U.S.C. § 1503 in United States v. Essex [, 407 F.2d 214 (6th Cir.1969),] or in United States v. Tackett [, 113 F.3d 603 (6th Cir.1997) ]." Byrnes Br. at 3. Defendant asserts that these two panel decisions conflict and that, therefore, we are free to determine which interpretation is proper. The government argues that defendant's argument was not properly preserved for appeal and that, even if it had been, it is without merit.
 The government relies upon Fed.R.Crim.P. 12(b) to support its position that Byrnes has waived any argument with respect to a defect in the indictment. Fed.R.Crim.P. 12(b)(2) provides that if the indictment fails to charge an offense, the objection "shall be noticed by the court at any time during the pendency of the proceedings." However, if it is a mere error in the indictment, any objection must be raised prior to trial. Fed.R.Crim.P. 12(b)(2); see United States v. Adesida, 129 F.3d 846, 850 (6th Cir.1997), cert. denied --- U.S. ----, 118 S.Ct. 1688, 40 L.Ed.2d 824 (1998) (distinguishing between an indictment that is duplicitous and an indictment that charges a non-offense).
 In United States v. Oldfield, 859 F.2d 392 (6th Cir.1988), this Court held that the defendant waived his right to object on appeal that the indictment charged him under the incorrect statute when he failed to raise it prior to trial. Oldfield's indictment charged him with mail fraud, a felony, while he alleged he should have been indicted for odometer tampering, which was a misdemeanor. 859 F.2d at 397. Unlike defendant Byrnes, however, Oldfield did not allege that the statute under which he was charged did not proscribe his conduct, but rather that the rule of lenity required the government to proceed only under the misdemeanor statute. Id. at 397-98. In this case, Byrnes' argument is that the indictment against her fails to charge an offense because the conduct with which she is charged does not fall within the statute under which the government proceeded. Thus, Byrnes' failure to raise the issue prior to trial does not constitute a waiver. See Adesida, 129 F.3d at 850; United States v. Foley, 73 F.3d 484, 487 (2d Cir.1996)("Issues that go to whether the conduct proved is punishable under the statute charged are ... cognizable on appeal under the plain-error doctrine."); United States v. Meacham, 626 F.2d 503, 509 (5th Cir.1980) (indictment may be challenged for the first time on appeal under Rule 12(b)(2) where it charges a defendant with a crime that does not exist under the statute); Government of Virgin Islands v. Greenidge, 600 F.2d 437, 439 & n. 2 (3d Cir.1979)(where element of crime is not charged in the indictment the issue of the defect is not waived by a failure to raise prior to appeal).
 Having determined that the issue is properly before us, we now turn to the merits of Byrnes' argument. She contends that the 1982 Congressional amendments to 18 U.S.C. § 1503 altered the provision so that it currently does not proscribe the conduct charged in the indictment. The indictment stated that she was charged with obstruction of justice under § 1503 for attempting to persuade individuals to testify falsely and for procuring a false "receipt" for the gun safe. Byrnes J.A. at 34-36.
 
 
 1
 As a preliminary matter, defendant's assertion that her conviction under 18 U.S.C. § 1503 was based solely on subornation of perjury is questionable. Although she was acquitted on charges of intimidating a witness, there was evidence at trial that Byrnes threatened potential witnesses. There was also evidence that she procured a false receipt for the gun safe. Byrnes J.A. at 100 (testimony of Pamela Bailey). Thus, it is not clear that the case squarely presents the issue of whether 18 U.S.C. § 1503 proscribes subornation of perjury, despite the fact that the parties have extensively briefed the issue. Assuming the issue is properly before us, however, we will address it.
 
 
 2
 Prior to 1982, 18 U.S.C. § 1503 provided criminal sanctions for:
 
 
 3
 Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, ... in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination....
 
 
 4
 18 U.S.C. § 1503.
 
 
 5
 In 1982, Congress passed the Victim and Witness Protection Act, Pub.L. No. 97-291, 96 Stat. 1248 (1982)("VWPA"). In so doing, it amended § 1503 to delete references to "witnesses." Thus, the provision now allows criminal sanctions for:
 
 
 6
 Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him....
 
 
 7
 18 U.S.C. § 1503(a) (1995 & Supp.1997).
 
 
 8
 In United States v. Essex, 407 F.2d 214 (6th Cir.1969), a case decided prior to the amendments, this Court faced the issue of how broadly to interpret the omnibus clause of the provision. The omnibus clause is located at the end of the provision and broadens the set of acts that may be prosecuted under it.[5] Employing the principle of ejusdem generis,[6] this Court held that the omnibus clause of § 1503 should "be read to embrace only acts similar to those mentioned in the preceding specific language." Essex, 407 F.2d at 218. The Essex court reversed the conviction of a minor who had submitted a false affidavit in support of James Hoffa's motion for a new trial, concluding that "the rendering of false testimony alone [does not constitute] an obstruction of justice" under § 1503. Id.
 
 
 9
 In United States v. Tackett, 113 F.3d 603 (6th Cir.1997), this Court addressed directly the question of whether 18 U.S.C. § 1503 proscribes subornation of perjury, answering in the affirmative.
 
 
 10
 Appellants ... argue that when Congress enacted new protection for witnesses in 1982 and 1988 it intended that such crimes be punished only under the new provisions in 18 U.S.C. §§ 1512 and 1513, rather than under § 1503. We do not believe that Congress intended to preclude the use of the omnibus clause of § 1503 in such prosecutions.
 
 
 11
 Tackett, 113 F.3d at 607.
 
 
 12
 Despite the fact that Tackett is directly on point, Byrnes urges us to follow the interpretation of § 1503 propounded by Essex. She cites to Watts v. Burkhart, 978 F.2d 269 (6th Cir.1992)(en banc) as supporting the proposition that we "must choose between following Tackett and a contradictory line of reasoning previously established by this Court." Byrnes' Reply Br. at 8. The en banc decision of Watts noted that a panel of this Court had elected to follow an earlier line of cases that was irreconcilable with a later panel decision.[7] 978 F.2d at 270. However, Watts is distinguishable from the instant case.
 
 
 13
 In Watts, the panel was faced with a line of cases that was irreconcilable with another panel decision. In this case, Byrnes asks us to determine the effect of Congressional amendments upon 18 U.S.C. § 1503, but urges us to adopt the reasoning of a case decided nearly twenty years prior to those amendments, rather than follow a recent panel decision which directly addresses the effect of the amendments. Because Essex preceded the amendments, and Tackett followed the amendments, the two cases are distinguishable on that basis alone. Thus, the two decisions are not irreconcilable.
 
 
 14
 Moreover, Essex has been limited by subsequent decisions. See, e.g., United States v. Faudman, 640 F.2d 20 (6th Cir.1981)(interpreting Essex narrowly, and holding that the omnibus clause encompasses instances where there is no threat or force used). Indeed, this Court has recognized that "Essex 's holding has been severely limited by this court in subsequent cases." United States v. Collis, 128 F.3d 313, 318 (6th Cir.1997).
 
 
 15
 Accordingly, we conclude that Tackett controls this case, and that witness-tampering is prohibited by 18 U.S.C. § 1503. The indictment properly charged defendant Byrnes with obstruction of justice pursuant to 18 U.S.C. § 1503.
 
 2. U.S.S.G. §§ 2J1.2
 
 16
 and 2J1.3
 
 
 17
 Byrnes also argues that the district court misapplied U.S.S.G. §§ 2J1.2 and 2J1.3, when it found that she was an "organizer or leader" of the conspiracy. Pursuant to that finding, the district court increased her base offense level by four levels. Byrnes contends that the court below "should have made specific factual findings concerning whether Ms. Byrnes could be more appropriately characterized as a 'manager or supervisor' rather than 'leader or organizer' under U.S.S.G. § 3B1.1." Byrnes' Br. at 20. As a threshold matter, the government contends that defendant did not preserve this issue for appeal and it is not properly before us. This contention is without merit. While true that Byrnes did not argue that she was a "manager or supervisor" rather than an "organizer or leader," her counsel did object to any enhancement under § 2J1.3. Byrnes J.A. at 163. Therefore, the issue was preserved for appeal.
 
 
 18
 Factual findings by a district court are reviewed only for clear error. United States v. Smith, 39 F.3d 119, 122 (6th Cir.1994). The determination of whether a defendant played a particular role in the offense is a factual determination. 18 U.S.C. § 3742(e); United States v. Garcia, 19 F.3d 1123, 1125 (6th Cir.1994); United States v. Ospina, 18 F.3d 1332, 1336 (6th Cir.1994). The preponderance of the evidence standard applies to sentencing factors. United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir.1989).
 
 
 19
 Although the district court did not provide detailed findings on the record, neither was the court tentative about its finding. During sentencing, the court stated: "There is no question in the court's mind that [Byrnes] was the organizer or leader of the conspiracy to obstruct justice." Byrnes J.A. at 166. It is not necessary to remand the case simply because the trial court failed to state a detailed factual basis for leadership enhancement. United States v. Alexander, 59 F.3d 36, 39-40 (6th Cir.1995). We may review the record before us to determine whether or not clear error exists. United States v. Washington, 127 F.3d 510, 515 (6th Cir.1997), cert denied, --- U.S. ----, 118 S.Ct. 2348, 141 L.Ed.2d 2718, 1998 WL 99633 (1998)(reviewing trial transcript to determine the defendant's role in the offense).
 
 
 20
 The application notes to U.S.S.G. § 3B1.1 state:
 
 
 21
 In distinguishing a leadership and organizational role from one of mere management or supervision, ... [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, ... the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 22
 U.S.S.G. § 3B1.1, comment (n.4).
 
 
 23
 We cannot say that the district court's finding that Byrnes was a leader or organizer was clearly erroneous. At trial, there was evidence that the majority of the discussions regarding the scheme took place at her home and at her behest, that she recruited people for participation, that she kept the list of who would testify as to ownership of which guns, and that she met with each witness to go over their testimony. Thus, the district court was not clearly erroneous in determining that she was an organizer or leader. See United States v. Ward, 68 F.3d 146, 148, 151 (6th Cir.1995)(upholding level four enhancement where defendant rented house where others sold drugs that he had provided to them); United States v. Perkins, 994 F.2d 1184, 1192 (6th Cir.1993)(upholding level four enhancement where defendant had organized contraband shipments, directed others to assist in transporting and packing contraband, and drove several lower-ranking conspirators to work and paid their wages); United States v. Castro, 908 F.2d 85, 90 (6th Cir.1990)(upholding enhancement of defendant's offense level where testimony showed that defendant directed shipments of contraband and organized local distribution).
 
 
 24
 Accordingly, for the reasons set forth above, we AFFIRM Linda Byrnes' conviction and sentence.
 
 B. Raymond Miller
 
 25
 On appeal, defendant-appellant Raymond Miller argues that: 1) there was insufficient evidence to sustain his convictions; and 2) the non-disclosure of the results of handwriting comparisons was a violation both of Fed.R.Crim.P. 16 and of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 
 1. Sufficiency of the Evidence
 
 26
 A claim that evidence is insufficient to sustain a conviction requires us to draw every reasonable inference from the evidence in the government's favor, United States v. Woods, 877 F.2d 477, 479 (6th Cir.1989), and to uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Collis, 128 F.3d 313, 319 (6th Cir.1997) (quoting United States v. Kottmyer, 961 F.2d 569, 573 (6th Cir.1992)). We do not evaluate witness credibility, but must respect the jury's role in weighing credibility issues. United States v. Warner, 971 F.2d 1189, 1195 (6th Cir.1992).
 
 
 27
 The evidence in this case, taken in the light most favorable to the government, is sufficient for a rational trier of fact to find Raymond Miller guilty of conspiracy to obstruct justice and obstruction of justice.
 
 
 28
 The essential elements of conspiracy are: (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
 
 
 29
 United States v. Poulos, 895 F.2d 1113, 1117 (6th Cir.1990)(quoting United States v. Meyers, 646 F.2d 1142, 1143-44 (6th Cir.1981)).
 
 
 30
 To convict Raymond Miller for obstruction of justice, the jury was required to find that: (1) John Byrnes' trial was pending at the time defendant engaged in obstructive conduct; (2) defendant knew that John Byrnes' trial was pending; and (3) that defendant knowingly and voluntarily acted for the purpose of influencing testimony in order to obstruct or influence the administration of John Byrnes' trial. United States v. Bashaw, 982 F.2d 168, 170 (6th Cir.1992); United States v. Jeter, 775 F.2d 670, 675 (6th Cir.1985), cert. denied, 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986).
 
 
 31
 Defendant Raymond Miller asserts that the evidence was insufficient to convict him on both counts, and emphasizes the "inconsistency" between a verdict of "guilty" for obstruction of justice and a "not guilty" verdict on the other substantive counts, i.e., the subornation of perjury and intimidation of witnesses counts. However, as Raymond Miller concedes, "[a] jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts." R. Miller's Br. at 22 (quoting United States v. Rowan, 518 F.2d 685, 688 (6th Cir.1975) (citation omitted)). Defendant does not question that many of the elements of the offenses were established at trial. See R. Miller's Br. at 25. Instead, he claims that the primary issue before the Court is whether there was sufficient evidence for the jury to find beyond a reasonable doubt that he voluntarily, knowingly, and deliberately joined the conspiracy and did something to bring about the obstruction of justice.
 
 
 32
 We decline to devote considerable space to a discussion of this argument. There was evidence that Raymond Miller threatened various individuals, and evidence that he was involved in, and participated in, the plan. While defendant questions the credibility of the witnesses who testified against him, we may not second-guess the jury's credibility determinations. "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." United States v. Adamo, 742 F.2d 927, 935 (6th Cir.1984) (emphasis in original). Particularly when taking into account the deference to be accorded a jury verdict,[8] we hold that there was sufficient evidence to sustain Raymond Miller's conviction.
 
 2. Discovery and Brady Claim
 
 33
 Raymond Miller also asserts that the district court erred when it denied his motion to compel discovery of a report of handwriting comparisons. Miller argues both that the decision was an abuse of the district court's discretion in violation of Fed.R.Civ.P. 16, and that the government violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not turning over the report. Defendant's contentions are without merit.
 
 
 34
 Defendant provided handwriting exemplars to the government to be compared with a handwritten note. The note was found on the windshield of a car owned by Pamela Bailey, a witness in defendant's case. However, the note was found six months after the end of the conspiracy alleged in defendant's indictment. The district court ruled that the government had to turn over the note if leaving the note was one of the charged acts in the indictment, but that the report did not need to be disclosed if writing or placing the note was not one of the charged acts or if the report did not relate to the note at all. R. Miller J.A. at 261-62.
 
 
 35
 Discovery decisions are reviewed for an abuse of discretion. United States v. Frost, 914 F.2d 756, 764 (6th Cir.1990). According to Rule 16(a)(1)(D):
 
 
 36
 (D) Reports of Examinations and Tests. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.
 
 
 37
 Fed.R.Crim.P. 16 (emphasis added). The highlighted portion is at issue here.
 
 
 38
 Counsel for the government indicated that the exemplars were taken as part of an independent investigation,[9] and that they were not evidence in defendant's case. R. Miller J.A. at 44, 255-56. The government contends that the results of the handwriting tests were neither material to the defense, nor were they intended for use by the government, and therefore, they did not have to be disclosed under Rule 16. We agree. Therefore, we conclude that the district court did not abuse its discretion in ruling that the report did not need to be disclosed.
 
 
 39
 Raymond Miller also asserts that the failure of the government to disclose the results of the handwriting comparisons was a violation of Brady. Brady and its progeny require that the government disclose to a defendant, at trial, evidence which is favorable to the accused, and which is material to the issue of guilt or punishment. Evidence is "material" if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Pennsylvania v. Ritchie, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).
 
 
 40
 On a Brady claim, the reviewing court is required to reverse in the case of constitutional error, if the effect of the evidence suppressed by the government is to undermine confidence in the outcome of the defendant's trial. United States v. Bagley, 473 U.S. 667, 668, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The decision is reviewed de novo. United States v. Phillip, 948 F.2d 241, 249-50 (6th Cir.1991).
 
 
 41
 Counsel for the government indicated to the district court that the handwriting report was inconclusive as to whether Raymond Miller had written the note. R. Miller J.A. at 255-56. Defendant argues, however, that the evidence was possible impeachment evidence, relevant to cross-examination at trial. Specifically, defendant claims that if the note had been written by one of the witnesses testifying against defendant, it would have discredited the witness' testimony that he or she was threatened by Raymond Miller. R. Miller Br. at 30-31.
 
 
 42
 We conclude that the handwriting report at issue here does not fall within Brady as it was not material to the case. Even if the report established that the threatening note, written six months after the events at issue, was written by one of the government witnesses, any further undermining of the credibility of any witnesses was not likely to change the outcome of the case. Defendant's counsel elicited testimony from each witness that he or she had committed perjury in a past trial, as well as evidence about a variety of prior bad acts, including drug use and trafficking. Therefore, it is not likely that the outcome of the trial would have been different, even if the results of the test had been as defendant speculates, and had been disclosed.
 
 
 43
 Accordingly, the Court concludes that the district court did not err in denying defendant's motion to compel, nor did the government violate Brady by failing to provide defendant with a copy of the handwriting report.
 
 
 44
 For the reasons set forth above, we AFFIRM Raymond Miller's conviction as to both obstruction of justice and conspiracy to obstruct justice.
 
 
 45
 C. Government's Appeal as to Troy Miller and Cross-Appeal as
 
 
 46
 to Raymond Miller
 
 
 47
 Troy Miller was sentenced to fifteen months on each of Counts 1 (conspiracy to obstruct justice) and 2 (obstruction of justice) with the terms to be served concurrently. The sentence was based on a total offense level of 14 and a criminal history category of I.[10] No fine was imposed. A special assessment of $50.00 per felony count of conviction was imposed, as well as three years of supervised release.
 
 
 48
 At sentencing, the trial judge overruled the government's position that Troy Miller's total offense level should be computed as of the time of the commission of the offenses of conviction,[11] opting instead to calculate relevant conduct as of the time of commission by Mr. Byrnes of the underlying 18 U.S.C. § 922 firearms offense (felon in possession). Specifically, the trial court held at the sentencing hearing as follows:
 
 
 49
 The court reads this guideline somewhat differently than the government, however, and concludes that a better application of this guideline is to address what the defendant knew or should have known as to the specific offense characteristic of the crime committed by Mr. Byrnes, which was being a felon in possession of firearms. No evidence was offered at the Byrnes trial or in connection with this case involving Mr. Byrnes, Raymond Miller, and Troy Miller or in connection with this sentencing proceeding that suggests that Troy Miller had any knowledge with respect to the number of weapons possessed by Mr. Byrnes at the time that these weapons were seized by the government.
 
 
 50
 The court acknowledges that a good argument could be made, as Mr. Courtade has done here, that the guidelines should be read more broadly because in this case Mr. Miller has been convicted of trying to get Mr. Byrnes acquitted of charges involving a specific number of weapons and therefore the specific offense characteristic related to those number of weapons should apply to him as well, but the court rejects that analysis concluding that the better application of these guidelines is to address what was known or reasonably should have been known by the defendant in this case at the time that Mr. Byrnes committed the underlying offense, which occurred at the time of the search, and there being no evidence that Mr. Troy Miller knew how many weapons his cousin was in possession of as a convicted felon, the court declines to apply the guideline application urged by the government and will utilize only the base offense level of 20 in the accessory after the fact calculation under 2X3.1. Accordingly, six levels are subtracted from the base offense level of 20, resulting in an adjusted offense level of 14.
 
 
 51
 T. Miller J.A. at 137-138.
 
 
 52
 Similarly, Raymond Miller was sentenced to eighteen months on each of Counts 1 (conspiracy to obstruct justice) and 2 (obstruction of justice) with the terms to be served concurrently. The sentence was based on a total offense level of 14 and a criminal history category of I.[12] No fine was imposed. A special assessment of $50.00 per felony count of conviction was imposed, as well as three years of supervised release.
 
 
 53
 Again, the trial court found that there should be no enhancement under § 2K2.1(b) for the number of firearms, specifically finding as follows:
 
 
 54
 [T]he record will reflect that the court's resolution of that issue is the same in this case as it was in the Troy Miller case, and that is that under these guidelines the specific offense characteristic addresses itself to what was known by or reasonably known to this defendant at the time the underlying crime occurred and not based upon what this defendant later learned about the number of weapons that were seized from the defendant, and for those reasons the ruling is the same, and that is that there is no specific offense characteristic that otherwise applied to Mr. Byrnes based upon the number of weapons that would apply to this defendant because factually there's been no showing that this defendant either lived in the house or had any knowledge of how many weapons Mr. Byrnes illegally possessed in his status as felon at the time those weapons were seized from him.
 
 
 55
 Now with that understanding, for purposes of appeal, then, the court's findings are as follows:
 
 
 56
 Probation recommends that the base offense level here be level 12 and that it be increased by eight points for the specific offense characteristic relating to Mr. Raymond Miller's threats in order to obstruct justice under 2J1.2(a) and 2J1.3(b)(1). For the reasons set forth in the matter of United States versus Troy Miller, the court finds that Raymond Miller should be sentenced under the cross-reference in 2J1.2(c) rather than under 2J1.2(a) or (b), and the court grants the objection to the eight-level increase for the specific offense characteristic relating to the number--relating to threats based upon Mr. Miller's acquittal of that specific charge and the court having declined to exercise its discretion to use that conduct notwithstanding the lower standard of proof that applies in a sentencing compared to the underlying criminal charge for the same reasons set forth in both United States versus Troy Miller and United States versus Linda Byrnes also earlier today.That takes us, then, to the accessory after the fact guideline in 2K3.1, which provides for establishment of a base offense level six levels lower than the offense level for the underlying offense but in no event less than four or more than 30. The underlying offense of which Mr. Byrnes was convicted and sentenced was set forth in 2K2.1. For the reasons just articulated a moment ago, the court finds that the base offense level that will be used here under 2K2.1 is level 20 under 2K2.1(a)(4), that being the base offense level that applied to Mr. Byrnes and there being no showing whatsoever that this defendant was not aware that his nephew was a felon at the time that these weapons were seized from him.
 
 
 57
 For the reasons also articulated in United States versus Troy Miller, the court rejects the government's arguments that the specific offense characteristic relating to the number of weapons should be used to enhance this base offense level and finds that the base offense level, then, under 2X3.1(a) is level 20 reduced by the six levels set forth in that guideline, producing an adjusted offense level of 14.
 
 
 58
 R. Miller J.A. at 276-78 (emphasis supplied).
 
 
 59
 The United States argues on appeal that while the district court applied the appropriate guidelines[13] in sentencing Raymond and Troy Miller, their offense levels should have been enhanced under U.S.S.G §§ 2X3.1 and 2K2.1(b)(1)(E) to reflect the number of firearms known to each of them at the time the defendant conspired to obstruct justice. We review de novo the district court's application of the Sentencing Guidelines to a set of undisputed facts.[14] See United States v. Murphy, 96 F.3d 846, 848 (6th Cir.1996).
 
 
 60
 In sentencing a defendant convicted of obstructing the prosecution of a criminal offense, the court is required to calculate the base offense level for the offense of conviction under both the "Obstruction of Justice" guideline, USSG § 2J1.2, and the "Accessory After the Fact" guideline, § 2X3.1, and apply the greater of the two sentences. USSG § 2J1.2(c)(1)(1995). Section 2X3.1 sets the base offense level at 6 levels lower than the offense level for the underlying offense. "Underlying offense" is defined as "the offense as to which the defendant is convicted of being an accessory. Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendants," see Application Note 10 of the Commentary to 1B1.3 (Relevant Conduct). USSG § 2X3.1, comment. (n.1) (emphasis added).
 
 
 61
 John Byrnes was convicted of being a felon in possession of firearms and sentenced pursuant to USSG § 2K2.1(a)(4), which carries a base offense level of 20. The specific offense characteristics for § 2K2.1 include enhancements for offenses involving more than 3 firearms; in this case, John's sentence was enhanced by 5 levels for the specific offense characteristic of possessing 33 firearms. USSG § 2K2.1(b)(1)(E). The government argued at sentencing, as it does on appeal, that pursuant to Application Note 1 of 2X3.1, this 5-level specific offense characteristic should be used in calculating Troy Miller's sentence because Troy knew that John had been indicted and that the indictment listed 33 separate weapons, he was present at the meetings where the list of 33 firearms was discussed and "ownership" of the various firearms was assigned to various witnesses, and he saw the 33 firearms in the courtroom when he came to John's trial and perjured himself. As noted previously, the district court rejected this argument and focused on Raymond Miller's and Troy Miller's "knowledge with respect to the number of weapons possessed by Mr. Byrnes at the time that these weapons were seized by the government." " T. Miller J.A. 136-37 (emphasis added); see also R. Miller J.A. 275-77 (adopting for purposes of sentencing Raymond the court's resolution of this issue in Troy's sentencing).
 
 
 62
 It appears that no published case law in any circuit specifically addresses this issue. This circuit, however, in a recent unpublished opinion, United States v. Jones, 145 F.3d 1334, 1998 WL 152750 (6th Cir.1998) (unpublished), described the inquiry as follows:
 
 
 63
 Because Jones was sentenced as an accessory after the fact, the pertinent inquiry related to her cognizance of the special characteristics of Baugh's offense at or prior to the time that she became Baugh's accessory after the fact by committing perjury and obstructing justice during her May 13, 1993, testimony at Baugh's trial.
 
 
 64
 Id. at * 2 (emphasis added); see also United States v. Stimson, 19 F.3d 31, 1994 WL 56966, at * 2 (9th Cir.1994) (unpublished) (looking at defendant's knowledge at the time she obstructed justice). If this is the appropriate inquiry, and we conclude that it is, the trial court applied an incorrect legal standard.
 
 
 65
 Moreover, as a matter of logic, the trial court's standard is indefensible. In this type of situation, the defendant is being punished for being an accessory to or obstructing the investigation or prosecution of a crime. The Guidelines reduce the magnitude of punishment by six levels to reflect the lesser level of involvement, but nonetheless peg the defendant's sentence to the specific crime that he knew he was covering up. It only makes sense to look at the defendant's knowledge when the defendant acted. Cf. United States v. Delgado, 61 F.3d 904, 1995 WL 419003, at * 10 (6th Cir.1995) (unpublished) ("The Commission surely considered the possibility that a defendant might have played no role in the underlying offense except for the obstruction of its investigation or prosecution, but it determined that a defendant's willingness to participate in such an obstruction should be punished accordingly to the magnitude of the overall offense, not the defendant's role in the cover-up.") Under the district court's construction, a defendant who knows nothing about the specifics of a crime when the principal acted, but then learns of the specifics and nonetheless agrees to cover up the crime will not be held accountable for the specifics of his cover-up. This is contrary to the purpose of Application Note 1.
 
 
 66
 In addition, the district court's decision contravenes the basic concepts underlying the Sentencing Guidelines. The Guidelines establish a framework for sentencing that relies on both the offense of conviction and the defendant's relevant conduct. The offenses of conviction in this case are conspiracy to obstruct justice and obstruction of justice. U.S.S.G. § 1B1.3 defines relevant conduct to include
 
 
 67
 all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant
 
 
 68
 . . . . .
 
 
 69
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ...
 
 
 70
 U.S.S.G. § 1B1.3(a)(1).
 
 
 71
 The conspiracy in this case led to a number of witnesses systematically committing perjury during John Byrnes' trial on charges of being a felon in possession of thirty-three firearms. The Guidelines focus on each defendant's charged offense (i.e., offense of conviction) plus an examination of the actual conduct of the defendant in the context of the charged offense. See U.S.S.G. Chapter 1--Introduction and General Application Principles, Part A p 4. Relevant conduct must, by its nature, provide for consideration of events up to, and after, the commission of the offense charged and as to which the defendant is convicted. To restrict consideration of a defendant's knowledge to a point in time prior to the commission of the offense of conviction would be inconsistent with the broad analytical principles underlying the Guidelines.
 
 
 72
 The Guidelines contemplate that, in accordance with U.S.S.G. §§ 2J1.2, 2X3.1, and 2K2.1, a defendant acting with the knowledge that a large number of firearms "are involved" in an offense of conviction will have his offense level increased accordingly. This is consistent with the principle that a defendant should be punished according to the magnitude of his overall offense as established by the record in the case. Both Raymond and Troy Miller had knowledge of the large number of firearms involved in the crime with which John Byrnes was charged, and both had that knowledge at the time they conspired and acted to obstruct justice. Therefore, their offense levels should have been increased five levels, pursuant to U.S.S.G. §§ 2X3.1 and 2K2.1(b)(1)(E).
 
 
 73
 Accordingly, we VACATE the sentences imposed upon Raymond and Troy Miller, and REMAND for re-sentencing.
 
 III. CONCLUSION
 
 74
 For the foregoing reasons, we AFFIRM the convictions of both Linda Byrnes and Raymond Miller, and the sentence imposed on Byrnes. We VACATE the sentences imposed upon defendants Raymond and Troy Miller and REMAND for re-sentencing in light of this opinion.
 
 APPENDIX
 U.S.S.G. § 2J1.2 provides as follows:
 
 75
 (a) Base Offense Level: 12
 
 
 76
 (b) Specific Offense Characteristics
 
 
 77
 (1) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels.
 
 
 78
 (2) If the offense resulted in substantial interference with the administration of justice, increase by 3 levels.
 
 
 79
 (c) Cross Reference
 
 
 80
 1. If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.
 
 U.S.S.G § 2X3.1(a) provides as follows:
 
 81
 Base Offense Level: 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30. Provided, that where the conduct is limited to harboring a fugitive, the offense level shall not be more than level 20.
 
 
 82
 Application Note 1 under U.S.S.G. § 2X3.1 provides as follows:
 
 
 83
 "Underlying offense" means the offense as to which the defendant is convicted of being an accessory. Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant; see Application Note 1 of the Commentary to § 1B1.3 (Relevant Conduct).
 
 
 84
 U.S.S.G. § 1B1.3(a) provides, in part, as follows:
 
 
 85
 Relevant Conduct (factors that determine the Guideline Range)
 
 
 86
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 
 
 87
 (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 
 
 88
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
 
 
 89
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; ...
 
 
 90
 U.S.S.G. § 2K2.1(b) deals with firearms and provides, in relevant part:
 
 
 91
 (b) Specific Offense Characteristics
 
 
 92
 (1) If the offense involved three or more firearms, increase as
 
 
 93
 follows:
 
 
 94
 Number of Firearms Increase in Level
 (A) 3"4 add 1
 (B) 5"7 add 2
 (C) 8"12 add 3
 (D) 13"14 add 4
 (E) 25"49 add 5
 (F) 50 or more add 6
 
 
 
 *
 The Honorable Jon Phipps McCalla, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Specifically, she was convicted of subornation of perjury of witnesses Chad Neal and Jeffrey Baker
 
 
 [2]
 Arguments as to the appeals of the three defendants were heard together; however, each defendant has separate briefs and a joint appendix specific to his or her appeal. Accordingly, all references to materials in the appendices will reference a specific defendant's name. For example, references to the Joint Appendix in Byrnes' appeal appear as "Byrnes J.A. at __"
 
 
 [3]
 Throughout this opinion, all references to "Byrnes" refer to Linda Byrnes. John Byrnes' full name will be used
 
 
 [4]
 Raymond Miller is the brother of Linda Byrnes and the father of Troy Miller. The Millers lived in the house closest to Byrnes' home, although there was a considerable amount of land between them. See R. Miller J.A. at 143 (testimony of Pamela Bailey that there was a field and a swamp between the two houses)
 
 
 [5]
 The text of the clause provides penalties for whoever "by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede the due administration of justice." 18 U.S.C. § 1503
 
 
 [6]
 The term literally means "of the same kind, class, or nature". Black's Law Dictionary 517 (6th ed.1990). "Under 'ejusdem generis' canon of statutory construction, where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." Id
 
 
 [7]
 The en banc decision did not explicitly approve or disapprove of the panel's action, however. Instead, it merely cited to Court Policies, United States Court of Appeals for the Sixth Circuit § 10.2 (June 12, 1991), which states: "Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of this court." Watts, 978 F.2d at 270 n. 1
 
 
 [8]
 Sufficiency of evidence claims are reviewed in the light most favorable to the government. "If any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt, the convictions should be affirmed." United States v. Taylor, 13 F.3d 986, 991 (6th Cir.1994) (citing Poulos, 895 F.2d at 1117)
 
 
 [9]
 Defendant disputes that the exemplars were part of a separate investigation. R. Miller's Reply Br. at 4-7
 
 
 [10]
 The Guidelines, under Total Offense Level 14, Criminal History Category I are:
 Imprisonment Range: 15 to 21 months
 Supervised Release Range: 3 to 5 years
 Fine Range: $4,000.00 to $40,000.00.
 
 
 [11]
 Under the government's theory, the total offense level would be 19 and the criminal history category would be I, resulting in the following sentencing ranges:
 Imprisonment Range: 30 to 37 months
 Supervised Release Range: 3 to 5 years
 Fine Range: $6,000.00 to $60,000.00
 The five point increase in total offense level reflects the application of § 2K2.1(b) and specifically that Troy Miller was involved in an offense involving between 25 and 49 firearms. The record reflects that thirty-three firearms were recovered from the Byrnes home at the time of John Byrnes' arrest.
 
 
 [12]
 The Guideline ranges were the same for both Raymond and Troy Miller
 
 
 [13]
 Because the guidelines are subject to amendment and because this sentencing issue involves a comparison of sections of the Sentencing Guidelines, those sections are set out in the attached Appendix to facilitate review. See Appendix
 
 
 [14]
 The district court acknowledged that "if the court concludes that the time frame involves knowledge by this defendant after John Byrnes was arrested and these weapons were seized and taken from him, then the government's position would be correct." T. Miller J.A. at 136