**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0134n.06
Filed: November 29, 2004

**Nos. 03-3593, 03-3615, 03-3710**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| CARL WOODMAN, ROBERT WOODMAN, | ) | STATES DISTRICT COURT FOR THE |
| and JAMES WOODMAN, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellants. | ) | |
| | ) | |

Before: KEITH, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Defendants Carl, Robert, and James Woodman appeal their convictions of crimes related to tax evasion. All three argue the evidence presented at trial was insufficient to support their convictions. Carl Woodman adds two other arguments—that he was denied due process and a downward sentencing departure. We conclude that sufficient evidence supported the convictions, that Carl Woodman was not denied due process, and that the district court did not err in refusing to depart downward.

I. Background

Thomas Warholic and Defendant Carl Woodman created WeShare, Inc., as a charity for the homeless. From 1992 through 1995, WeShare collected over $600,000 per year in donations from which Warholic and Defendants drew salaries. WeShare also funneled sums to Warholic and Appellants through other "shell corporations" (as described by witnesses at trial) they formed and used primarily for their personal benefit, rather than any business purpose.

Defendants' jury convictions arise out of this scheme. All three were convicted of conspiracy to defraud the United States. Additionally, the jury convicted Carl and James Woodman of failure to file income tax returns and Robert Woodman of filing a false income tax return.

## II. Sufficiency of the Evidence

Where a defendant argues that the prosecution did not present sufficient evidence to support his conviction, this court must affirm the verdict if we conclude, after reviewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Martin*, 897 F.2d 1368, 1373 (6th Cir. 1990). The court may not weigh the evidence or assess the credibility of witnesses. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

### A. "Loans rather than income" defense

Defendants argue that the government presented insufficient evidence to convict them because the payments they received through their scheme were loans, not income. While the jury

could have reached that conclusion, sufficient evidence supported their contrary conclusion that the payments were income, not loans. Though Thomas Warholic testified that Defendants considered their payments from WeShare to be loans, the circumstances of the payments lacked any of the usual indicia of a repayment obligation. WeShare's bookkeeper testified that she issued checks for "consulting fees" to Robert and Carl Woodman, without characterizing these payments as loans. Warholic testified that Defendants planned for WeShare to eventually forgive the putative loans and pay the taxes on them at that time. But other testimony from Warholic casts doubt on whether the taxes would ever be paid. For example, he agreed that he "felt funny" about "avoiding taxes" through the plan. And when asked, "The plan was not ever to rip off Uncle Sam was it, just designed to delay?" he testified, "I think I knew deep down I was doing it."

With this evidence considered in the light most favorable to the government, the jury could have concluded beyond a reasonable doubt that the payments to Defendants were not loans, but were instead a means to permanently avoid paying taxes.

## B. Conspiracy to Defraud the Government

Defendants were convicted of conspiracy to defraud the government under 18 U.S.C. § 371. The elements of conspiracy are: (1) the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) the accused willfully became a member of the conspiracy; (3) one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) such overt act was

knowingly done in furtherance of some object or purpose of the conspiracy as charged. *United States v. Miller*, 161 F.3d 977, 985 (6th Cir. 1998). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) (internal quotes and citations omitted).

Here, the testimony of IRS employees and related exhibits showed that Defendants avoided paying taxes through a common scheme, using shell corporations. James Woodman argues that insufficient evidence existed to support his conspiracy conviction because he did not join WeShare until after the alleged conspiracy began. But the government presented evidence that he failed to report money he received from WeShare, just like the other defendants. This was sufficient to allow the jury to infer a common scheme and convict him along with the others.

## C. Failure to File Under 26 U.S.C. § 7203

The testimony of IRS employees showed that Carl and James Woodman each had an obligation to file a tax return and failed to do so. The jury could have found that Carl Woodman's failure was willful because Warholic's testimony showed that he and the others engaged in their scheme for the purpose of avoiding taxes. The jury also could have found that James Woodman's failure was willful because he filed a tax return in previous years, and therefore knew of his legal obligation to do so.

## D. Filing a False Return Under 26 U.S.C. § 7206(1)

To prove this offense, "the government need only prove that a defendant willfully made and subscribed a return, that the return contained a written declaration that it was made under penalties of perjury, and that the defendant did not believe the return to be true and correct as to every material matter." *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002). An IRS witness testified that, for tax year 1995, Robert Woodman filed Form 1040, which includes a statement that the filer signs it under penalty of perjury. Another IRS witness testified that Robert Woodman listed his income on this form as $5700 when it was actually $19,200, and that Robert understated his tax liability by $2025 as a result. Because Warholic's testimony and other evidence could allow the jury to conclude that the loans were really income, the jury could also conclude that Robert did not believe his return to be true.

## III.  Due Process

Carl Woodman alleges that WeShare entered into an agreement with the IRS to pay deficient payroll taxes in installments, that the IRS lost or destroyed this agreement, and that this violated his right to due process. The government violates due process if, in bad faith, it fails to preserve evidence that would have been potentially useful to a criminal defendant. *Illinois v. Fisher*, 124 S. Ct. 1200, 1202 (2004). Because the agreement at issue pertains to WeShare's tax liability, not Carl Woodman's, we doubt its potential usefulness. But regardless, Carl identifies nothing in the record that suggests that the government acted in bad faith.

## IV.  Downward Departure

Carl Woodman also argues that the district court should have granted him a downward departure after applying the United States Sentencing Guidelines, because of his alleged diminished capacity and "overstated" criminal history. This court cannot review a refusal to grant a downward departure unless the district court (1) improperly computed the guideline range; (2) was unaware of its discretion to depart downward; or (3) imposed the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines. *United States v. Cooper*, 348 F.3d 493, 495 (6th Cir. 2003). The conditions for review of the district court's decision are not met here—the district court considered Carl Woodman's arguments and concluded that "the case hasn't been made for a downward departure."

## V. Conclusion

We affirm Defendants' convictions and Carl Woodman's sentence.

**Clay, Circuit Judge, concurring.**  I concur in the majority opinion.  I write separately to highlight certain facts that demonstrate the sufficiency of the evidence underlying the most significant charge in this case, Defendants' conspiracy to defraud the United States of tax revenue by classifying income from WeShare as loans that would never have to be repaid, in violation of 18 U.S.C. § 371.

The evidence showed that Carl Woodman was a co-owner of WeShare and that Robert Woodman was responsible for WeShare's payroll tax withholdings as well as its bookkeeping.  By 1995, James Woodman was WeShare's general  manager, responsible for, *inter alia*, signing all payroll checks.  IRS Special Agent Perry Mastrocola testified that his investigation of WeShare uncovered a four-year history of monetary transfers from WeShare to all three Defendants, either directly or indirectly through numerous shell corporations that Defendants owned or controlled: WAR (by Thomas Warholic); CCPA (by Robert Woodman); WJC (by Warholic and Carl Woodman); Creative Marketing Management (by Warholic and Carl Woodman); Basic Telecommunications Auditors, Inc. (by Robert Woodman); Basic Business Auditors (by James Woodman); and Basic Bookkeeping (by James Woodman).  Sharon Hemsath, a former WeShare employee, testified that Carl Woodman and/or Robert Woodman had instructed her to write checks to these various companies as payment for their "consulting fees."  They then used these payments for personal expenses.

The evidence further showed that Defendants schemed together to avoid their personal income tax obligations by classifying payments from WeShare directly, or indirectly through the

above-described corporations, as loans instead of as salaries. Defendant Warholic testified that, upon the suggestion of Robert Woodman, WAR, Inc. "was a company put together so that [he] could keep track of the money [he] was making from WeShare and put together to avoid paying taxes actually." Warholic further explained that he, Robert Woodman, and Carl Woodman had a meeting in which it was agreed that their income from WeShare would be booked as loans. Although Warholic added that Woodman said that at some point they would pay taxes on these loans, Warholic noted that he did not think of the payments as loans because they would not have to be re-paid until some uncertain date in the future. In addition, Robert Woodman stated that, at the time the taxes would be paid, WeShare (not Defendants themselves) would pay Defendants' personal tax liabilities on their behalf.

The jury could have found this evidence sufficient to show that Carl Woodman, Robert Woodman, and James Woodman, along with Warholic, conspired to defraud the United States of tax revenues. Carl, Robert, and James Woodman all had significant control over WeShare's financial affairs: Carl was a co-owner; Robert controlled the payroll taxes and bookkeeping; and James was the general manager. All of the defendants also owned or controlled the bank accounts of at least one corporation that, according to Warholic, Robert Woodman had advised that they set up in order to receive these alleged loans from WeShare. The jury could have concluded that Defendants knew that they were not receiving loans from WeShare or related corporations because there were no loan agreements, no requirement that Defendants pay interest, and no evidence that Defendants had to pay these "loans" back at any point in time. Thus, the jury rationally could have

concluded that Defendants intended to deprive the United States of tax revenue that attached to their income from WeShare.